VERNON v. ANTONA.

1. EXCHANGE OF PROPERTY — FRAUD — RESCISSION — BURDEN OF PROOF.

In a suit for the rescission of a contract for an exchange of property on the ground of fraud, the finding of the trial court that plaintiffs had failed to sustain the burden of proof, *held*, justified by the record.

2. SAME—INADEQUACY OF CONSIDERATION—EQUITY—BAD BARGAIN.

Where, in an exchange of property, there is no fraud shown, and plaintiffs had the opportunity and ability to exercise their independent judgment as to its value, a court of equity will not set the transaction aside on the ground of gross inadequacy of consideration merely because plaintiff made a bad bargain.

3. SAME—RESCISSION—AFFIRMANCE—STATU QUO.

Where, after the deal had been completed, plaintiffs visited the property they had received, an orange grove, and, although dissatisfied and concluding they had been defrauded, they did not insist upon a rescission, but, instead, disposed of the water rights connected therewith, which was an act of affirmance, and allowed the property to be sold on foreclosure proceedings, thus placing it beyond their power to place defendants *in statu quo*, relief on the ground of rescission was properly denied.

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 24, 1922. (Docket No. 2.) Decided March 22, 1923. Rehearing denied June 21, 1923.

Bill by Warren Vernon and another against Alexander G. V. Antona and others for the rescission of a contract for an exchange of real property on the ground of fraud. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

On necessity for placing *in statu quo* on rescission of contract for sale of land, see note 30 L. R. A. 66.

*Harry Cohen* (*Fixel & Fixel* and *Harold Goodman*, of counsel), for plaintiffs. .

*Frederic T. Harward* and *John J. Gafill*, for defendants.

BIRD, J.    Plaintiffs exchanged their equity in an apartment building, number 270 Frederick street, in the city of Detroit, for defendants' equity in an orange grove in Redlands, California.    Both properties were carrying mortgages equal to a very large per cent. of their value.    Defendants lived in Detroit.    Plaintiffs were in Berkeley, California, when the trade was made, and were represented by Frederick Zeigen, a real estate dealer in Detroit.    After the trade was consummated plaintiffs went to Redlands and examined the property and were not pleased with conditions.    After waiting about five months they commenced this suit, praying rescission, on the ground of misrepresentation and fraud.    After a hearing the chancellor disposed of the issues, as follows:

"The bill of complaint in this cause was filed for the purpose of obtaining the return of a contract assigned by plaintiff to defendant Antona upon a flat building located at 270 Frederick avenue in the city of Detroit, which property plaintiff had acquired some six months previous to the transfer to defendant Antona.    Defendants Antona were the owners of an orange grove in Redlands, California, which they acquired by transfer to one Saly Saulson of a land contract for $23,000, receiving in return for said land contract the sum of $12,000 in cash and the equity of Saly Saulson in the orange grove.    The orange grove, at the time of the transfer to Antona, had upon it a mortgage of $9,500, so that the equity of defendants in the orange grove is estimated to be $11,000, which was exchanged for plaintiffs' equity in the property at No. 270 Frederick street in the city of Detroit.

"Defendant Fred H. Zeigen acted for the parties in making the exchange.    The grounds for cancellation

of this exchange are alleged to be fraud and misrepresentation and inadequacy of consideration. The questions are questions of fact and the burden of proof rests upon the plaintiffs to show any misrepresentation or fraud or inadequacy of consideration upon the part of the defendants. Defendants Antona owned the orange grove for approximately one year previous to the sale. The record does not disclose that either of the defendants knew anything about orange groves. There were no communications between defendants and plaintiffs. The negotiations were carried on by correspondence between the defendant Zeigen and the plaintiff Vernon, and began October 20, 1919, when defendant Zeigen wrote a letter to plaintiffs as follows:

" 'We have the offer of inclosed orange grove subject to $9,500 for your 270 Frederick street property subject to $28,000. Know nothing about the orange grove but think you have some dope on it.'

"To this letter plaintiffs reply as follows:

" 'FRED H. ZEIGEN,
     " 'Detroit.
" 'Dear Sir: I am sending night letter same time I send this. I had Mr. Antona's orange grove put up to me one year ago and we went to see it at that time. I would not consider it at the price he gave us, but would be glad to exchange apartment for it if he would take our equity, whatever the amount is, and he be responsible for the $1,000 payment on or before March,' etc.

"In their testimony plaintiffs deny that they had seen the orange grove. I am constrained to find that they did see it and knew of its location and something of its condition. I have examined the evidence carefully and nowhere do I find any direct evidence of any fraudulent act or misrepresentation on the part of the defendants. In fact, it may be said from the record that the plaintiffs and defendants Antona were not even acquainted with each other, business being done through defendant Zeigen. They allowed him to represent them in the trade and urged him very strongly to make it. There was no representation as to value whatever, the exchange was made, equity for equity, and if Antona's conduct is to be questioned at

all in respect to his good faith, it could only rest upon inference or suspicion. That fraud is not to be presumed or lightly inferred is the well established law of this State. There must be some fraudulent conduct upon the part of defendants to warrant the court rescinding a contract lawfully made by the parties with their eyes wide open who insisted upon making the contract and who are in a position to determine for themselves all of the facts as to the value of the property being acquired and their legal rights. I cannot find from the record that there was even an expression of opinion by the Antonas as to value, nor do I find that defendant Zeigen, individually, or in conjunction with Antona, ever made any representations whatever. In fact, in his correspondence he expressly stated that he knew nothing about the orange groves.

"It is insisted upon the part of the plaintiffs that the court should set aside the transfer on the grounds of gross inadequacy of consideration. I am satisfied that no fraud is manifest in this case unless it is to be presumed from lack of consideration. I have carefully examined the cases cited by counsel bearing upon this question and I find that they do not apply to the case at bar. I do not believe that the court should interfere with the valuation placed by the parties on the subject-matter. Where they have the opportunity and ability to exercise their independent judgment as to its value, I do not believe that a court of equity is designed to aid people who make bad bargains where no fraud or misrepresentation is shown.

"Plaintiffs allege in their bill that they tender a deed of the orange grove and are capable and will put the Antonas *in statu quo* in case the contract is rescinded. The evidence shows on the contrary that the orange grove had passed by foreclosure proceedings beyond their control; that Vernon for the payment of $200 consented to a foreclosure of his interest and sold the irrigation stock to Halsey T. Allen, agent and attorney for Saly Saulson. They are then in no position to place the Antonas *in statu quo* in any particular.

"I am constrained to hold that plaintiffs have not sustained the burden of proof and therefore the bill

should be dismissed with costs to defendants. There are other reasons why plaintiffs should not prevail in this action, but inasmuch as the matter has been disposed of as above I think it needless for me to go into other questions.

"Defendant Zeigen has filed a cross-bill asking affirmative relief, viz.: That his lien be restored to the Frederick street property acquired by the defendants Antona. I do not think this position tenable from the evidence. Mr. Zeigen, himself, testified that Mr. Antona was very fair in all his statements and that, as I recall it, also says that Mr. Antona made no representations whatever, that it was to be an exchange of equity for equity. In view of this testimony Mr. Zeigen's position now, that his lien be restored to the Frederick avenue property is hardly in keeping with his testimony. I find, further, that Mr. Zeigen knew that the mortgage on the orange grove was to be foreclosed several months before proceedings were instituted. That if he had desired to do so, he, himself, could have protected his mortgage by bidding the property in or by taking up the first mortgage. Inasmuch as he neglected to do this I do not believe that the court should compensate his negligence; therefore, I feel that the cross-bill of defendant Zeigen should be dismissed and the parties left in the position they placed themselves in at the time the transaction was made, for to transfer to the Frederick avenue apartment the second mortgage of $2,150 as claimed by Mr. Zeigen, I would also have to find that Mr. Antona was guilty of fraud. This I cannot find from the evidence. The cross-bill will, therefore, be dismissed without costs."

It appears that the deal was closed the last days of November, 1919. The latter part of January, 1920, plaintiff went from Berkeley to Redlands and examined the orange grove. He was dissatisfied. He concluded at that time that he had been defrauded, but he did not promptly tender a reconveyance to Antona, and insist upon a rescission, but instead disposed of the water rights connected with the grove for $300.

This act was in affirmance of the exchange.    He had it in his power to place defendants *in statu quo* had he acted promptly, but instead he sold the water rights and delayed his rescission until foreclosure proceedings made it impossible to restore to defendants what they had conveyed to them.    This should prevent plaintiffs from obtaining any relief on the ground of rescission. *Merrill* v. *Wilson,* 66 Mich. 232; *Galvin* v. *O'Brien,* 96 Mich. 483; *Draft* v. *Hesselsweet,* 194 Mich. 604.

The foregoing opinion by the chancellor so well expresses our views of the evidence that we adopt it as the opinion in the case.

The decree is affirmed, with costs to defendants.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, SHARPE, and STEERE, JJ., concurred.    MOORE, J., did not sit.