**TWO MEN AND A TRUCK/INTERNATIONAL INC., a Michigan corporation f/k/a Two Men and A Truck/USA, Inc., Plaintiff,**

v.

**TWO MEN AND A TRUCK/KALAMAZOO, INC., a Michigan corporation; T & M Express, Inc., an Indiana corporation; Two Men and A Truck/Northern Indiana, Inc., an Indiana corporation; Mark D. Mayes, an individual; and Keum Lee Mayes, an individual, Defendants.**

No. 5:94–CV–162.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 7, 1997.

Steven M. Raymond, May, Simpson & Strote, Bloomfield Hills, MI, for plaintiff.

R. Todd Redmond, Kalamazoo, MI, Don C. Huprich, Huprich & Associates, PC, Tucker, GA, for defendants.

### OPINION

QUIST, District Judge.

Before the Court is Defendants' motion for reconsideration of this Court's Opinion and Order dated September 27, 1996, *Two Men and a Truck/Int'l Inc. v. Two Men and a Truck/Kalamazoo, Inc.,* 949 F.Supp. 500 (W.D.Mich.1996). Defendants request the

Court to reconsider its previous Opinion and Order in light of a July 1996 decision issued by the Michigan Court of Appeals. Defendants further request the Court to address their breach of contract claims against Plaintiff, and to clarify which Defendant is liable for which acts of infringement and unfair competition.

### Discussion

 Defendants request the Court to reconsider its decision to not allow Defendants to rescind the Franchise Agreements, arguing that the doctrine of "unclean hands" does not apply to acts of rescission under the MFIL.[1] Defendants base this claim upon the Michigan Court of Appeals case of *Martino v. Cottman Transmission Sys., Inc.*, 218 Mich.App. 54, 554 N.W.2d 17 (1996).[2] In *Martino*, the Michigan Court of Appeals held that upon a franchisor's violation of the MFIL, a franchisee has an unqualified right to rescission, whether or not the franchisee has "unclean hands." *Id.* at 62, 554 N.W.2d at 21. This Court finds the majority opinion in *Martino* to be an anomaly and contrary to

precedent set by the Michigan Supreme Court.[3]

Based on this Court's analysis of relevant Sixth Circuit and Michigan Supreme Court law, this Court finds the dissent in *Martino* to reflect the way the Michigan Supreme Court would apply the remedy of rescission to violations of the MFIL:

> The majority also states that the MFIL gives a franchisee an unqualified right to rescission upon a franchisor's violation of the MFIL even if the franchisee has unclean hands or has materially breached the franchise agreement. I disagree.... Further ... I would not follow [*Interstate Automatic Transmission Co., Inc.*, 134 Mich.App. 498, 350 N.W.2d 907 (1984)] because it would represent bad law that we are not bound to follow as precedent.
> The idea that rescission can be awarded to those with unclean hands ... is a novel and disturbing notion.... Indeed, the majority's conclusion is directly contrary to *Kundel v. Portz*, 301 Mich. 195, 210, 3 N.W.2d 61 (1942), which unremarkably stated that "rescission, whether equitable

---

1. Defendants again allege that Plaintiff violated Section 5 and Section 8 of the Michigan Franchise Investment Law ("MFIL"), M.C.L. §§ 445.1501 to 1546. Therefore, Defendants claim they are entitled to rescission pursuant to Section 31 of the MFIL. Defendants claim that alleged statements made by Plaintiff's representative, Ray Damas, were fraudulent misrepresentations in violation of Section 5 of the MFIL. However, under Michigan law, to establish fraud, "the statements alleged to be false must relate to past or existing facts, and not to a future promise or expectation." *Haque Travel Agency, Inc. v. Travel Agents Int'l, Inc.*, 808 F.Supp. 569, 572 (E.D.Mich.1992) (citations omitted). Indeed, throughout their motion for reconsideration, Defendants refer to the alleged statements made by Mr. Damas as "projections." Therefore, this claim by Defendants has no basis.

 Defendants also claim that Plaintiff violated Section 8 of the MFIL by providing the required disclosure documents seven days, rather than ten days, prior to the signing of the franchise agreement. This Court has already provided an analysis in its previous Opinion of how the Michigan Supreme Court would decide this issue of state law if presented with it. Other states' highest courts have addressed this exact issue and have come to the conclusion that a technical violation of the states' franchise law does not create an absolute right to rescission, especially in the absence of harm to the franchisee. *See, e.g., Continental Basketball Assoc., Inc. v. Ellenstein En-*

*ters., Inc.*, 669 N.E.2d 134, 140 (Ind.1996) ("the legislature did not intend that every contract made in violation of the Franchise Acts be void."); *Clapp v. Peterson*, 327 N.W.2d 585, 587 (Minn.1982) ("To hold that the legislature intended that franchisees have the absolute right to rescind a franchise agreement which violates the Minnesota Franchise Act could lead to harsh and unfair results where no actual fraud is present."); *Peck of Chehalis, Inc. v. C.K. of Western America Inc.*, 304 N.W.2d 91, 98 (N.D.1981) ("something more than a mere showing of a violation of the franchise law is necessary in order that a franchisee may rescind a franchise agreement").

2. *Martino* was published after oral arguments in the case at hand, but well before this Court's Opinion was issued in September of 1996. Defense counsel offers no reason for its failure to discuss *Martino* earlier.

3. Defendants are incorrect in their bald, unsupported assumption that this Court is bound by decisions of the Michigan Court of Appeals. *See Inland Waters Pollution Control Inc. v. National Union*, 997 F.2d 172, 184 (6th Cir.1993) ("A decision of an intermediate state appellate court is not binding on a federal court in a diversity case if the federal court is 'convinced by other data that the state's highest court would determine otherwise.'") (quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985)).

or legal, is governed by equitable principles."

\* \* \* \* \* \*

While the statute does not expressly mention defenses, this is not only not unusual, but the reverse would be. Repeatedly in our statutes equitable remedies are referred to without recitation of allowable defenses. It is assumed, and always has been, that the statutes will be applied in accord with common law understandings and case law explanations that those familiar with these terms of art are held to understand. Indeed, the majority itself proves the pervasiveness of this understanding by utilizing this approach when it requires the return to the status quo ante notwithstanding the fact that the statute omits any reference to such an equitable requisite. Under the majority's logic, the statute's omission of the need to return the parties to the status quo ante should foreclose such a requirement.

*Martino,* 218 Mich.App. at 68–69, 554 N.W.2d at 24 (Taylor, J., dissenting). *See also Rudisell v. Fifth Third Bank,* 622 F.2d 243, 254 (6th Cir.1980) (allowing judicial modification of a statutory rescission process); *United States v. Robbins,* 819 F.Supp. 672, 674 (E.D.Mich.1993) (finding claims that combine issues of law and equity often allow equitable defenses); *Steggles v. National Discount Corp.,* 326 Mich. 44, 49–50, 39 N.W.2d 237, 239 (1949) (holding that equity has jurisdiction where remedy at law would be doubtful, incomplete, or inadequate); *Peck of Chehalis, Inc. v. C.K. of Western America, Inc.,* 304 N.W.2d 91, 100 (N.D.1981) (allowing equitable defenses raised by franchisor where franchise laws allowed for rescission). In short, this Court properly applied equitable defenses in connection with Defendants' claimed right to rescission.

■ Under Michigan law, the doctrine of unclean hands is designed to protect the integrity of the judiciary, and a court may apply the doctrine upon its own motion. *Stachnik v. Winkel,* 394 Mich. 375, 382, 230 N.W.2d 529, 532 (1975) (citations omitted). *See also Griffin v. Johnson,* 345 Mich. 159, 166, 75 N.W.2d 898, 902 (1956) (finding that a court of equity is not to be made an instrument of wrong); *Madill v. Michigan Nat'l Bank,* 302 Mich. 251, 255, 4 N.W.2d 538, 539 (1942) (stating that it is fundamental that he who seeks equity must do equity). The Michigan Supreme Court, in *Stachnik,* stated that the United States Supreme Court "captured the essence" of the unclean hands doctrine when it stated:

> "[The clean hands maxim] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of the court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be 'the abettor of iniquity.'"

*Id.* at 382, 230 N.W.2d at 532 (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1944) (citation omitted)).

■ This Court has already reviewed the factual record and determined that Defendants have come to this Court with unclean hands. Defendants, in bad faith, continually failed to properly report their earnings to Plaintiff and continually failed to make royalty payments to Plaintiff. Defendants cannot now claim in good faith that because Plaintiff provided them with an offering circular seven days, rather than ten days, prior to entering into the franchise agreement, that two years later they may now rescind the agreement, without question, and reap all benefits they received in the meantime. Without a doubt, the Michigan legislature did not intend this type of egregious, inequitable result. Furthermore, this Court will not and may not allow itself to be used as an instrument of wrong by granting Defendants relief under these circumstances.[4]

---

4. This Court sees no need to address whether Defendants are equitably estopped from rescinding the agreements. However, the facts of this case convincingly indicate a strong likelihood that Defendants would be equitably estopped from claiming rescission. *See J.C. Wyckoff &*

Finally, Defendants reargued many issues already addressed in the Court's previous Opinion. First, Defendants deny being estopped from asserting any rights to the name "Two Men and a Truck." As discussed in the previous Opinion, Defendants are estopped from claiming any rights to the name "Two Men and a Truck." Defendants claim that they should not be estopped from asserting any rights to the name "Two Men and a Truck" because the Franchise Agreements allegedly have been rescinded and, therefore, are not binding. Defendants are incorrect. Even assuming the agreements are void, Defendants' actions and representations equitably estop Defendants at this point from claiming that Plaintiff has no rights to the name "Two Men and a Truck." Defendants signed the Franchise Agreements acknowledging that Plaintiff owned the "Two Men and A Truck" name and mark. Furthermore, Defendants acted at all times like a franchisee and benefitted from the Agreements. Yet Defendants continually failed to pay for the use of Plaintiff's name and mark, and only upon learning of Plaintiff's intent to terminate did Defendants attempt to rescind the Agreements based on alleged two-year old violations of the MFIL.

Second, Defendants request the Court to address Counts 4 and 5 of Defendants' counterclaims. However, as the Court previously indicated, those claims were dismissed pursuant to 28 U.S.C. § 1367.

Last, Defendants request the Court to clarify its Opinion and Order regarding which Defendants are liable for which acts of infringement and unfair competition. The Court will address that issue upon determination of damages.

### Conclusion

For the foregoing reasons, Defendants' motion for reconsideration is denied. An Order to this effect will be entered.

### ORDER

In accordance with the Opinion entered this date,

*Assoc., Inc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1493 (6th Cir.1991) (setting forth elements

**IT IS HEREBY ORDERED** that Defendants' motion for reconsideration (docket no. 148) is **DENIED.**

of equitable estoppel under Michigan law).