# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1283

_____

| | | |
|---|---|---|
| G. R. Toghiyany, doing business as<br>First Class Refurbishing, | * | |
| | * | |
| | * | |
| Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| Amerigas Propane, Inc., doing | * | |
| business as Amerigas Partners LP; | * | |
| John Iannarelli; Amerigas Propane, L.P., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 12, 2002

Filed: October 25, 2002

_____

Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
BOGUE,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District
of South Dakota, sitting by designation.

G. R. Toghiyany appeals a decision of the district court[2] granting summary judgment in favor of AmeriGas Propane, Inc. (AmeriGas) on Toghiyany's claims for breach of contract and common law fraud, and denying his first and second motions to compel discovery. We affirm.

## I.

In January 1998, AmeriGas and Toghiyany entered into an agreement pursuant to which Toghiyany would refurbish propane cylinders that AmeriGas would market for use with residential barbecue grills. The agreement was never reduced to writing. Prior to this agreement, Toghiyany had been in the auto body and car repair business. Toghiyany had painted trucks, cylinders, and propane tanks for AmeriGas.

Toghiyany and AmeriGas agreed that Toghiyany would refurbish propane cylinders for AmeriGas's Missouri and southern Illinois markets. In February 1998, after the parties' initial agreement, Toghiyany submitted another bid to AmeriGas to refurbish cylinders for markets in Indiana and Ohio. This bid established the terms of his prospective agreement with AmeriGas and did not include a durational term. In March 1998, Toghiyany began to refurbish the propane cylinders at a facility he leased from AmeriGas. No lease agreement was signed for the premises, which were located at AmeriGas's Flint Hill property in Missouri.

Less than one year after Toghiyany had started refurbishing cylinders, AmeriGas noted a marked decline in the quality of Toghiyany's services. Some of the valves on refurbished cylinders had leaked and the cylinders had not been wrapped sufficiently. Shortly thereafter, AmeriGas representatives met with Toghiyany to discuss their quality and safety concerns. Although Toghiyany took

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

responsibility for the declining quality of the refurbished cylinders, there was no improvement following the meeting. In October 1999, AmeriGas again informed Toghiyany of safety concerns. Less than one month later, a leaking cylinder ignited a significant fire at Toghiyany's refurbishing facility. AmeriGas officially terminated its agreement with Toghiyany in March 2000 by terminating his tenancy of the Flint Hill facility.

## II.

We review a district court's grant of summary judgment de novo. Iowa Coal Mining Co. v. Monroe County, 257 F.3d 846, 852 (8th Cir. 2001). We will affirm the grant of summary judgment if "the evidence, when viewed in the light most favorable to the nonmoving party, indicates that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law." Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000); Fed. R. Civ. P. 56(c).

## A.

Toghiyany contends that his agreement with AmeriGas is enforceable and that AmeriGas breached the agreement by terminating Toghiyany's services after two years. The district court held that the oral agreement for services between AmeriGas and Toghiyany, which Toghiyany contends was to be performed over a five-year period, was unenforceable because it violated the Missouri statute of frauds. Under Missouri law, which governs this diversity action, "[n]o action shall be brought . . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith . . . ." Mo. Rev. Stat § 432.010 (statute of frauds governing contracts for sale of services). Toghiyany contends that although the agreement between the parties was not reduced to a single writing signed by AmeriGas, both

parties intended the contract to run for five years. He asserts further that a contract embodying such an agreement can be inferred from the cumulative writings supplied by the parties.

To be enforceable, an agreement need not be reduced to a single written contract. Vess Beverages, Inc. v. Paddington Corp., 941 F.2d 651, 654 (8th Cir. 1991) (citations omitted). Under Missouri law, however, a contract can be inferred from several different writings only if the writings "in combination supply the essential terms" of the agreement. Id. In the context of contracts for services, the term specifying the duration of the contract is an essential element and "must be set out in the contract in order for the contract to comply with the statute of frauds." Kansas City Power & Light Co. v. Burlington N. R.R. Co., 707 F.2d 1002, 1004 (8th Cir. 1993) (citation omitted) (holding that although a "series of letters between the parties . . . constitute[s] a contract . . . the contract does not comply with [Missouri's] statute of frauds because it fails to set out the duration of the agreement"). Furthermore, the documents constituting the contract must be signed, or, in the alternative, one document must be signed, so long as the others are significantly related to it. Vess Beverages, 941 F.2d at 654. An enforceable contract cannot be inferred from the writings supplied by the parties in this case because the writings-- various e-mails and draft agreements--neither contain the essential durational element nor are signed. Id.; see also Kansas City Power & Light Co. at 1003-4. Accordingly, the agreement for services between Toghiyany and AmeriGas is unenforceable.

In the alternative, Toghiyany contends that the absence of a written agreement containing a term of years does not preclude enforcement of the agreement because it is an enforceable requirements contract not barred by the statute of frauds. A "'requirements contract' is 'one in which one party promises to supply all the specific goods or services which the other party may need during a certain period at an agreed price, and the other party promises that he will obtain his required goods or services from the first party exclusively.'" Essco Geometric v. Harvard Indus., 46 F.3d 718,

728 (8th Cir. 1995) (citation omitted) (emphasis added). Notably, a term defining the period during which Toghiyany will supply services to AmeriGas is absent and in dispute. Toghiyany does not cite and we have not found any Missouri law exempting requirements contracts from the general formal requirements of the statute of frauds. Because no durational term is present in the documents composing the agreement, Toghiyany's argument fails.

**B.**

Toghiyany next argues that AmeriGas committed fraud and engaged in fraudulent misrepresentation by inducing him to enter into a business relationship with AmeriGas under the misapprehension that a written contract providing for a five-year commitment would govern the relationship. Toghiyany alleges that from the outset of their business dealings, AmeriGas did not intend to fulfill this commitment.

To withstand AmeriGas's motion for summary judgment, Toghiyany must produce evidence sufficient to satisfy each of the following elements of a claim for fraud: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the hearer's right to rely thereon, (9) and the hearer's consequent and proximate injury." Midwest Printing, Inc. v. AM Int'l, 108 F.3d 168, 170 (8th Cir. 1997); Washburn v. Kansas City Life Ins. Co., 831 F.2d 1404, 1411 (8th Cir. 1987). Fraud "may not be presumed, and a party's case will fail if he can show only facts and circumstances which are equally consistent with honesty and good faith." Washburn, 831 F.2d at 1411 (citation omitted).

"The critical element in a fraud case based on a statement of present intent is proof that the speaker, at the time of the utterance, actually did not intend to perform consistently with his words." Paul v. Farmland Industries, Inc., 37 F.3d 1274, 1277 (8th Cir. 1994) (citation omitted). Toghiyany contends that despite AmeriGas' representations to the contrary, it never intended the relationship to continue for five years. Toghiyany, however, presented neither facts nor circumstances that could support a jury finding that AmeriGas "knew its representations, if made, were false when made" and that Toghiyany relied on those representations. Id. First, AmeriGas and Toghiyany entered into an oral agreement in January 1998, pursuant to which Toghiyany refurbished propane canisters from March 1998 until March 2000, on premises leased from AmeriGas at its Flint Hill's property. This arrangement continued until AmeriGas terminated its relationship with Toghiyany because of the declining quality of his refurbishing services. Although the agreement was never reduced to writing, a draft agreement between AmeriGas and a Colorado supplier, which AmeriGas provided to Toghiyany's bank to secure his financing, contained a three-year term of duration. The evidence presented suggests that both parties intended the relationship to be long term, though the precise duration of the agreement was unspecified.

Second, Toghiyany has not presented evidence demonstrating that he relied on AmeriGas's representation of a long-term business relationship to his detriment. In February 1998, just prior to beginning operations on the Flint Hill premises, Toghiyany submitted a second bid to AmeriGas. He sought to refurbish cylinders for the Ohio and Indiana markets. This bid was unsigned and did not contain a term of years. If the presence of a term of years was in fact the factor upon which Toghiyany had relied in entering into the January 1998 agreement with AmeriGas, one would not expect that such a term would have been absent from a document prepared and signed by Toghiyany. See Tietjens v. General Motors Corp., 418 S.W.2d 75, 81 (Mo. 1967) ("It has indeed been laid down as a broad proposition of law that if the means of knowledge be at hand, and equally available to both parties, and the subject of the

transaction be open to the inspection of both alike, the injured party must avail himself of such means, if he would be heard to say that he was deceived by the representations of the other party . . . ."); see also Cook v. Little Caesar Enterprises, Inc., 210 F.3d 653, 658 (6th Cir. 2000) ("Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement."). Thus, the evidence presented neither indicates fraud, nor Toghiyany's reliance thereon, but rather a change in circumstance that was to Toghiyany's disadvantage. Paul, 37 F.3d at 1277. After reviewing the evidence in the light most favorable to Toghiyany, we conclude that there exists no genuine issue of material fact with respect to this claim.

## III.

Toghiyany's final claim on appeal is that the district court erred in denying his first and second motions to compel discovery. Toghiyany contends that it would not have been unduly burdensome for AmeriGas to have complied with his request and that its compliance would have supplied both parties with needed evidence. We review the district court's denial of a motion to compel discovery for gross abuse of discretion. Duffy v. Wolfe, 123 F.3d 1026, 1040 (8th Cir. 1997) (citation omitted). Our review of the record satisfies us that Toghiyany has not shown that such abuse occurred in the circumstances of this case.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.